[Crim. No. 13328. Fourth Dist., Div. One. Apr. 29, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
VINCENT RALPH SANCHEZ et al., Defendants and Appellants.

**COUNSEL**

Joel M. Kriger and Quin Denvir, State Public Defender, under appointments by the Court of Appeal, and Paul Bell, Deputy State Public Defender, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, John W. Carney and Yvonne H. Behart, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COLOGNE, Acting P. J.**—Vincent Ralph Sanchez and Antonio Sanchez (Tony), brothers, were charged with the murder of Randy Kennedy (Pen. Code, § 187[1]), the attempted murder of Gregory Blair (§§ 664, 187) and discharge of a firearm at an inhabited dwelling (§ 246). There were allegations the first two offenses were committed with the use of and while armed with a firearm within the meaning of sections 12022.5 and 12022, subdivision (a). In addition, it was alleged Vincent had a prior felony conviction.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

After motions to suppress evidence (§ 1538.5) and to dismiss the information (§ 995) were denied, Vincent and Tony moved to sever their trials. That motion was also denied. Following these rulings, Tony withdrew his plea of not guilty and entered a plea of guilty of murder in the second degree (§ 187); Vincent withdrew his not guilty plea and entered a plea of guilty of voluntary manslaughter (§ 192, subd. (1)) while armed with a firearm (§ 12022, subd. (a)). In view of the entry of these pleas, other charges were dismissed. After sentencing, both defendants appealed.

On March 26, 1980, Loraine Gina Santibanez (here called Gina and now Gina Sanchez)[2] purchased a .22 caliber rifle for Vincent with whom she was living.

On July 27, 1980, shortly after 11 p.m., James Mazon, Randy Kennedy and Loretta Hanson were standing outside the Tilt Roller Skating Rink in Escondido. Gregory Blair, a security guard for the rink, was nearby. Mazon saw a small orange Datsun station wagon and heard shots. He pushed Kennedy and Hanson to the ground and saw the barrel of a rifle being pulled back into the Datsun through the window on the passenger side. He described the passenger in the Datsun as having dark hair. Two other witnesses gave a similar description of the car and its passenger.

The shots wounded Blair and Kennedy. Kennedy died two days later from the wounds.

The police recovered several spent bullets from inside the rink and spent casings from the roadway.

Careful police investigation revealed the Sanchez brothers had a motive to vent anger on the rink and Vincent owned an orange Datsun. The brothers would match the general description of the assailants. Officers visited Vincent's house and saw the described vehicle. On July 28, Mazon and the two other witnesses were taken to Vincent's house and shown the vehicle which they identified as the one they had seen the evening before at the time of the shooting. The officers maintained a surveillance of the vehicle that night and at 6:30 a.m. Gina came out of the house with 2 small children and a man 40 to 45 years old. She drove off and the officers followed.

---

[2]Before the hearings, subject of these proceedings, she married Vincent.

Gina eventually stopped and the officers questioned her. The officers saw in plain sight several expended .22 caliber casings on the seats and floorboards of the car. Gina told them she had purchased a .22 caliber rifle for Vincent at K Mart in March 1980. She said she was in bed when Vincent and his brother came home shortly after midnight on the 27th. They talked for about an hour and then they told her they were going to Tony's house. They left and shortly afterward Vincent returned and went to bed. The officers asked her if the men had a gun when they came into Vincent's residence and she said they did not but if there had been a gun, it would probably have been taken to Tony's.

The officers impounded the car and believed at this time they had probable cause to believe the rifle would be at either Tony's or Vincent's residence. They obtained a telephonic search warrant to search the two houses and the Datsun automobile. The officers found the original packing box for a .22 caliber rifle and two live rounds of .22 caliber ammunition at Vincent's house. The Datsun produced eight spent cartridge casings and one live hollow point bullet, all .22 caliber. The officers searching Tony's house found a loaded .22 caliber rifle wrapped in a blanket in the attic.

Tony and Vincent were placed under arrest.

A firearms expert determined the casings from the car and on the street near the rink, as well as the expended bullets they had found in the rink, came from this rifle.

After entering his plea of guilty, Tony admitted he was the one who did the shooting while Vincent was driving the car. Both contend the search warrant is invalid and the evidence obtained should have been suppressed.

■ Tony particularly contends that because the magistrate never prepared or signed the original search warrant required by Penal Code section 1528 for telephonic search warrants, the duplicate original to which the officer signed the magistrate's name at his direction was not a search warrant, in fact or in law.

Section 1526 authorizes the issuance of the search warrant on oral statements: "(b) In lieu of the written affidavit required in subdivision (a), the magistrate may take an oral statement under oath which shall

be recorded and transcribed. The transcribed statement shall be deemed to be an affidavit for the purposes of this chapter. . . ."

The procedure for issuance after the oral statement has been made is provided in section 1528 which reads in pertinent part: "(b) The magistrate may orally authorize a peace officer to sign the magistrate's name on a duplicate original warrant. A duplicate original warrant shall be deemed to be a search warrant for the purposes of this chapter, and it shall be returned to the magistrate as provided for in Section 1537. In such cases, the magistrate shall enter on the face of the original warrant the exact time of the issuance of the warrant and shall sign and file the original warrant and the duplicate original warrant with the clerk of the court as provided for in Section 1541."

Both the Fourth Amendment of the United States Constitution and its counterpart in the California Constitution (art. I, § 13) provide no search warrant shall issue except upon probable cause, supported by oath or affirmation. Neither requires presentation of a written affidavit or declaration as a prerequisite to the issuance of a warrant. The use of a telephonic search warrant authorized by California law is constitutional (*People v. Peck* (1974) 38 Cal.App.3d 993, 999-1000 [113 Cal. Rptr. 806]). Compliance with the requisites of the statute must be adhered to in order to insure adequate judicial supervision and control to preserve the constitutional guarantees (*id.* at p. 1000). Technical defects in the procedure, however, do not invalidate the search (*Sternberg v. Superior Court* (1974) 41 Cal.App.3d 281, 291-292 [115 Cal.Rptr. 893]). The suppression of the evidence is necessary in the case of a defective search procedure where required to deter—to compel respect for the constitutional guaranty in the only effective available way—by removing the incentive to disregard it and also to preserve the imperative of judicial integrity (*Elkins v. United States* (1960) 364 U.S. 206, 217-222 [4 L.Ed.2d 1669, 1677-1680, 80 S.Ct. 1437, 1444-1447]). The inadvertent absence of the magistrate's signature on the traditional warrant has been held a technical defect which does not invalidate the warrant (*People v. Superior Court (Robinson)* (1977) 75 Cal.App.3d 76, 79-80 [141 Cal.Rptr. 917]; *Sternberg v. Superior Court, supra,* 41 Cal.App.3d 281, 291-294). We can find no authority holding the absence of the original telephonic search warrant invalidates the search.

In the recent case of *People v. Ramos* (1982) 30 Cal.3d 553 [180 Cal.Rptr. 266, 639 P.2d 908], a somewhat similar contention was made in the context of an assertion counsel was ineffective for failing to ob-

ject to the telephonic warrant as defective because the magistrate there did not sign the warrant before its execution. When he carried out the search, the officer possessed the duplicate original warrant he had signed with the magistrate's name as instructed by the magistrate. *Ramos* deemed the contention spurious, saying in part: "The procedure utilized here is specifically authorized by Penal Code sections 1526, subdivision (b) and 1528, subdivision (b). Appellant's reliance on *Bowyer* v. *Superior Court* (1974) 37 Cal.App.3d 151 . . . is misplaced. *Bowyer* merely held that the officer/affiant must prepare a duplicate original warrant and that such warrant must be in existence at the time the magistrate authorizes the officer to affix his signature. (*Id.*, at pp. 163-164 and fn. 11.) That requirement was clearly complied with in the present case." (*People* v. *Ramos, supra,* 30 Cal.3d 553, 574.)

Here, the original search warrant, usually held by the magistrate and delivered to the clerk, could not be found. We are not told the circumstances of its absence. There was a suggestion by counsel that it may be the practice of some judges routinely to omit the preparation of an original. This, of course, would be a blatant affront to the procedures provided by the Legislature and cannot be condoned. There is nothing in the record here, however, from which we can conclude the failure to prepare or produce the original was intentional. Moreover, we are unable to find any prejudicial effect on the conduct of the search by reason of its absence. The duplicate warrant used by the officer was in writing and signed by the police officer as agent of the magistrate under authority expressly given. The duplicate had all the appearances of a valid warrant and did not mislead the possessors of the premises being searched. The duplicate was available for inspection during the search as would be the situation under normal circumstances, and was in fact later signed by the judge in the manner he would have done on the original.

The protections of a lawful search remain—the original recording of the conversation between the deputy district attorney, policeman and the magistrate were preserved; the officer conducted the search with a written warrant signed under the authority of the judge; the judge actually signed the duplicate which was lodged with the court following the search; and nothing occurred during the search which would have required the signed original to be produced or examined. Additionally, there is no suggestion here the issuance by the magistrate was other than at the time noted on the duplicate. We find no prejudice from this defect in the procedures; the defect was technical and the remedy of

suppression of the evidence obtained is not justified (see *People* v. *Ramos, supra,* 30 Cal.3d 553, 574; *People* v. *Superior Court* (*Robinson*), *supra,* 75 Cal.App.3d 76, 79-80; *Sternberg* v. *Superior Court, supra,* 41 Cal.App.3d 281, 291-294). The absence of the original warrant does not constitute error requiring suppression of the evidence obtained in the search.

■ Vincent contends the affidavit in support of the search warrant failed to contain information giving rise to probable cause any evidence would be obtained at Tony's house.

It is unnecessary to review the authorities reciting all the rules relative to the contents of the affidavit supporting the issuance of the warrant. ■ Suffice it to say the affidavit must allege (1) the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matter contained in such statement, and (2) some underlying factual information from which the magistrate issuing the warrant can reasonably conclude the informant was credible or his information reliable (*Aguilar* v. *Texas* (1964) 378 U.S. 108, 114 [12 L.Ed.2d 723, 729, 84 S.Ct. 1509, 1514]; *Price* v. *Superior Court* (1970) 1 Cal.3d 836, 840 [83 Cal.Rptr. 369, 463 P.2d 721]).

■ The affidavit's use of Gina's statement "If there had been a weapon it would have probably been taken over to [Tony's]" was not improper, even though the officer admitted later he was aware this might have been said to lead the police away from Vincent since Gina was his "common law wife." Vincent complains of the officer not expressing this awareness to the magistrate and his implying that the weapon Gina referred to was the same one she had purchased earlier when in fact he later testified she had informed him she "had purchased a weapon, not the weapon that she thought was over at Tony's, just a weapon for Vincent." The officer testified, too, he did not think there were two weapons, nor did he explain to the magistrate that he thought there might be two separate weapons.

The affidavit provides a reliable, factual basis the two men were involved in the shooting. Independent of that particular statement by Gina, the police investigation had led the officers to Vincent as owner of the vehicle used in the shooting. The crime witnesses' descriptions fit with Vincent's car. It was clear the weapon used was a .22 caliber firearm. Vincent and Tony were brothers and were together at Vincent's

house as well as at Tony's house after the shooting occurred, and they matched the general description of the persons who did the shooting. There was probable cause to believe if the Sanchez brothers had not disposed of the gun, it is probable it would have been hidden in one or the other locations. While this statement by Gina may have been believed as intended to misdirect the officers and they did not disclose this belief to the magistrate, searching both houses was appropriate regardless of her statement. Even if we were to excise her statement because it omits a statement of what the officer believed, there would still remain in the affidavit ample probable cause to issue the warrant. This being the case, inclusion of Gina's opinion about the location of a gun without also including the officer's opinion as to the purpose for which Gina said this requires no suppression. The same is true of any implication about a single gun the officer may have conveyed when he related Gina's statement.

Omissions of facts in the affidavit do not necessarily invalidate the issuance of the warrant. ■ "Though similar for many purposes, omissions and misstatements analytically are distinct in important ways. Every falsehood makes an affidavit inaccurate, but not all omissions do so. An affidavit need not disclose every imaginable fact however irrelevant. It need only furnish the magistrate with information, favorable and adverse, sufficient to permit a reasonable, common sense determination whether circumstances which justify a search are probably present. [Citations.]

"Recognizing this, the Courts of Appeal seem consistently to have held that an affiant's duty of disclosure extends only to 'material' or 'relevant' adverse facts. [Fn. omitted.] At the same time, they have applied the materiality requirement to reach only those omissions which significantly distorted the probable cause analysis. [Citations; fn. omitted.]

"We think the results reached by these decisions strike a proper balance among practicality, accuracy, and the policy of encouraging resort to the warrant process. [Citations.] We conclude, as Courts of Appeal effectively have concluded, that facts are 'material' and hence must be disclosed if their omission would make the affidavit *substantially misleading.* On review under section 1538.5, facts must be deemed material for this purpose if, because of their inherent probative force, there is a substantial possibility they would have altered a reasonable magistrate's

probable cause determination." (*People* v. *Kurland* (1980) 28 Cal.3d 376, 384-385 [168 Cal.Rptr. 667, 618 P.2d 213].)

 Here, there was evidence available to the police officer that some of the witnesses had a different description of the vehicle and some provided a different description of the occupants. In view of the fact several witnesses corroborated each other as to the type of vehicle used and the description of the occupants and the officer's independent investigation revealed a person who matched the limited description given by one group also owned a vehicle closely matching the description given, lived in the general vicinity and had a motive for the violence, there could be little, if any, doubt what direction their investigation should take. There was probable cause to believe the Sanchez brothers were the offenders and the weapon might be found in the residence of one or the other. To have detailed the discrepancies in the descriptions given them by the various other witnesses or an unrelated incident providing a motive for some other individuals, would not have added or detracted from the magistrate's probable cause determination of the propriety of this search of Vincent's and Tony's houses and the car. Failure to provide this evidence was not material and avoids the necessity for further examination of the type of omission, i.e., reasonable, negligent or recklessly inaccurate or intentionally misleading, to determine the remedy (see *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77 [104 Cal.Rptr. 226, 501 P.2d 234]; *People* v. *Cook* (1978) 22 Cal.3d 67 [148 Cal.Rptr. 605, 583 P.2d 130]). There is no suggestion the omission was a reckless or intentional falsehood designed to deceive the magistrate (see *People* v. *Kurland, supra*, 28 Cal.3d 376, 386-388). Even if we were to conclude the omission was material and negligently or intentionally done, we would apply the "add and retest" formula which would necessarily bring us to the same bottom line (*ibid*). We find no ground for suppression in the omissions of which Vincent complains.

 Vincent next contends the police subjected Gina to interrogation without giving her her *Miranda* rights. Even conceding she was entitled to a *Miranda* warning, Vincent has no standing to raise Gina's constitutional right of protection against self-incrimination. "In cases of searches and seizures conducted in violation of the Fourth Amendment we have held that the defendant has standing to object even when his own rights were not violated. [Citation.] Otherwise the deterrent effect of the exclusionary rule would be seriously weakened. Defendant contends that we should apply the same rule to *Escobedo-Dorado-Miranda* violations effectively to deter unlawful police interrogations. Noncoer-

cive questioning is not in itself unlawful, however, and the Fifth and Sixth Amendment rights protected by *Escobedo, Dorado*, and *Miranda* are violated only when evidence obtained without the required warnings and waiver is introduced against the person whose questioning produced the evidence. The basis for the warnings required by *Miranda* is the privilege against self-incrimination [citation], and that privilege is not violated when the information elicited from an unwarned suspect is not used against him." (*People* v. *Varnum* (1967) 66 Cal.2d 808, at p. 812 [59 Cal.Rptr. 108, 427 P.2d 772].) Gina was never charged with participation in the offenses and did not offer any "self-incriminating" statements. Nor were her statements used against her. It is thus clear the absence of any *Mirandizing* of Gina will not aid Vincent.

■ Tony contends Gina's fear she would be compelled to testify against her husband if she testified at the hearing on the search issue prevented her from giving testimony favorable to him. He contends if she had been allowed to testify at the search hearing, she would have denied making the statement the gun would probably be at Tony's house. His inability to call her at the suppression hearing, he argues, violated his constitutional right to compel the attendance of witnesses. To remedy this defect, he asserts the privilege not to testify against one's spouse (Evid. Code, § 970) should be subject to limited waiver, for purposes of the suppression hearing only, or there should be granted a severance so the spouse's testimony cannot be used at trial.

As we pointed out above, it is inconceivable this would have made any difference in the issuance of the warrant. Her denial of having made the statement, even if believed by the judge, would still leave enough evidence to support the issuance of the warrant. Tony contends if the court believed her proffered testimony no such statement was made, the judge hearing the suppression motion might have believed the officer intentionally deceived the magistrate and would have granted the suppression motion. Assuming Gina did not actually make the statement, the officer's misstatement of that fact alone is not sufficient to find the officer intentionally or recklessly misled the court in his affidavit. Conflicting statements of witnesses do not alone establish there was an intent to mislead the court; rather, only a different recollection of what was said could be the conclusion. In any event, we believe the absence of Gina's testimony had no effect on the outcome of the suppression motion. Had she testified as represented here and under conditions of limited privilege or severance as Tony proposes, there is no reasonable probability a different result would have occurred. This be-

ing the case, there is no need to consider Tony's claim of deprivation of his constitutional right to compel testimony, even assuming that right applies here (see *Washington* v. *Texas* (1967) 388 U.S. 14, 19 [18 L.Ed.2d 1019, 1023, 87 S.Ct. 1920, 1923]).

While it is true the court could have granted the motion to sever the trials and possibly solved Tony's dilemma, this is not a proper matter to raise after a plea of guilty has been entered (§ 1237.5;[3] Cal. Rules of Court, rule 31(d); *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 895-896 [135 Cal.Rptr. 786, 558 P.2d 872]). However, the law is settled where two or more defendants are jointly charged with any public offense, they must be tried jointly unless the court orders separate trials (§ 1098). ▮ While the court has discretion to grant separate trials, joint trials are eminently proper when the underlying charges depend on mutual action, common facts or common evidence (*People* v. *Diaz* (1969) 276 Cal.App.2d 547, 549 [81 Cal.Rptr. 16]). Obviously all are involved in this case and there was no abuse in the court's denial of the severance motion.

Judgments affirmed.

Wiener, J., and Work, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 24, 1982.

---

[3]Section 1237.5: "No appeal shall be taken by defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where:

"(a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings; and

"(b) The trial court has executed and filed a certificate of probable cause for such appeal with the county clerk."