[No. F002372. Fifth Dist. Oct. 31, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE LANDEROS MEZA et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Parts I, III and IV are not published, because they do not meet the standards of publication contained in rule 976(b), California Rules of Court.

**COUNSEL**

Lawrence D. Weber and Michael H. McGowan, under appointments by the Court of Appeal, Rowan K. Klein and Michael M. Crain for Defendants and Appellants.

John K. Van de Kamp, Attorney General, James T. McNally and James Ching, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HARDIN, J.**\*—Following denials of Penal Code section 1538.5 motions: Defendant, Jose Landeros Meza, by change of plea to guilty, was convicted of possession of heroin for sale (Health & Saf. Code, § 11351), admitted a charged prior conviction within the meaning of Penal Code section 1203.07, subdivision (a)(3), and was sentenced to state prison for a term of four years. Defendant, Gloria Borunda Meza, by change of plea to guilty, was convicted of misdemeanor in maintaining a place for the purpose of unlawfully selling, giving away or using heroin (Health & Saf. Code, § 11366). Imposition of sentence was suspended and probation granted. ■ ■ ■

■ Defendants' appeals challenge the trial court's denial of their suppression motions.[1] Both defendants contend the search warrant herein should not have issued for lack of probable cause. Additionally, defendant, Gloria Meza, argues prejudicial error in the magistrate's dilatory compliance with the certification requirements of Penal Code section 1526, subdivision (b); the lack of "good cause" and clear specification on the face of the search warrant for nighttime search; and the search exceeded the scope of the warrant.

### FACTS

■ "Because this court must look to the affidavits supportive of the search warrant in order to determine the sufficiency of the evidence to sustain a finding of probable cause, . . ." (*Dunn* v. *Municipal Court* (1963) 220 Cal.App.2d 858, 874 [34 Cal.Rptr. 251]) the statement of facts will be limited to the allegations set forth in the affidavits with a brief description of the circumstances surrounding the issuance of the search warrant.

The search warrant authorizing nighttime search of defendants' residence at 496 League Street, Pixley, was issued on May 27, 1982, at 10:22 p.m. in the residence of the issuing magistrate, Judge Walter Gorelick,[2] after receipt of the sworn oral statement of Detective Al Villa (Villa), agent of the California Department of Justice. The search of defendants' residence occurred shortly after midnight immediately following the issuance of the warrant. The charges against defendants were based on items found during the search including several firearms located in the garage, narcotics paraphernalia, a large triple-beam scale also found in the garage, 629 grams of material containing heroin and 150 toy balloons found in a green metal

---

\*Assigned by the Chairperson of the Judicial Council.

[1]"Notwithstanding the entry of the guilty plea, a review of the search and seizure contention may be had. (Pen. Code, § 1538.5, subd. (m); . . .)" (*People* v. *Chavez* (1972) 27 Cal.App.3d 883, 885 [104 Cal.Rptr. 247].)

[2]Judge Gorelick presided at defendants' preliminary hearing.

container buried 2 to 3 feet underground some 15 feet from the back door, in defendants' backyard.

The relevant details of the sworn oral statement given by Villa in support of the search warrant are as follows:

1. Villa learned from a confidential informant (hereafter CI) and Vince Zavala (Zavala) of the Fresno Police Department that within the last 10 days they had continuing "negotiations with Rigoberto LUGO for purchasing large quantities of heroin and cocaine." The CI in the past had provided information and assistance resulting in more than "three separate seizures of heroin and the arrests of three suspects in the County of Tulare" and four felony arrests in the County of Fresno, all having occurred within the last three months.

2. On April 30, 1982, the CI and Zavala, working in an undercover capacity, met with Rigoberto Lugo at his residence in Pixley "and negotiated a purchase of heroin." Lugo stated he did not have the heroin then, but "would send for the heroin to be picked up by his wife from his 'compadre,' a close friend who lived in Tulare." Lugo instructed his wife Mary "to go to Tulare to his 'compadre's' house and pick up the heroin." Mary Lugo was under surveillance as she left and was followed northbound from her residence "towards Tulare to the vicinity of Northern Pixley" at which time Villa and a detective from the Tulare County Sheriff's Department discontinued the surveillance.

3. Affiant had received intelligence information during the past year and one-half that Rigoberto Lugo and Jose Meza were close associates, and he personally had "seen LUGO and MEZA in each other's company near bars in the Delano area within the past year."

4. On May 8, 1982, affiant met with the CI, at which time he was apprised of the fact the CI told Lugo the "previous purchase of heroin" was not as good as Lugo had purported it to be. Subsequently, Lugo placed telephone calls to his "compadre" in Tulare to find out if the heroin had been tampered with.

5. On May 17, 1982, the CI and Zavala went to Lugo's residence to negotiate a large heroin and cocaine purchase, and to secure a sample. Lugo called his "compadre" in Tulare to get a sample; attempts to reach the "compadre" by telephone were unsuccessful. Zavala and the CI were told to return the next day. On May 18 the CI and Zavala received a sample of heroin from Lugo.

6. "[T]he [CI] advised [the affiant] on May 24, 1982, that Rigoberto LUGO had introduced him in a bar in Delano to Jose Manuel MEZA."

7. At approximately 11 a.m. on May 27, 1982, after days of negotiations between them, Zavala and Lugo had a telephone conversation regarding Zavala's purchase of a large quantity of heroin and cocaine. Lugo told Zavala the heroin "was not in" at that time but would be at his residence shortly thereafter. A little over an hour later, at approximately 12:10 p.m., law enforcement officers observed Mary Lugo leave her Pixley residence and drive to 496 League Street, Tulare, get out of the vehicle and enter the residence.

8. A check with utility companies indicated the utility services at the 496 League Street residence were in the name of Manuel Meza since March of 1981. The affiant stated Manuel Meza is one of the many aliases of Jose Manuel Meza, who "is a known major heroin trafficker . . . and has been convicted in 1977 for sales of heroin." Local law enforcement agencies, including the Tulare County Sheriff's Department and the Delano Police Department indicated Meza was "still trafficking in heroin in the Tulare County area."

9. "At approximately 1242, while Mary Alice LUGO was still at Jose Manuel MEZA's residence, Detective Zavala of the Fresno Police Department placed a recorded undercover call to Rigoberto LUGO and was told by Rigoberto LUGO that the heroin was not in yet but would be arriving shortly. Approximately two minutes later, surveillance agents . . . observed Mary Alice LUGO leave the League Avenue residence and return, via country roads, to her residence arriving there at approximately . . . 1319 hours." At approximately 1350 hours (1:50 p.m.), Detective Zavala received a telephone call from Rigoberto Lugo telling him that the heroin and cocaine had arrived.

10. The affiant then requested the search warrant be endorsed for night-time service because of the hour at which the search warrant was being obtained (10:22 p.m.), the arrest of Rigoberto Lugo earlier that day and the likelihood he would call Meza from the detention facility after booking had taken place for it had been the affiant's experience that associates when arrested would attempt to notify their friends so evidence may be disposed of. Moreover, "unidentified associates" had "been seen in the area of Manuel MEZA's residence and could possibly notify Manuel MEZA that Rigoberto LUGO had been arrested."

## DISCUSSION

### I*

. . . . . . . . . . . . . . . . . . . . . . . . .

### II

 ▮▮▮ Defendant, Gloria Meza, contends the magistrate's failure to certify the transcription of Officer Villa's sworn oral statement pursuant to Penal Code section 1526, subdivision (b), "as soon as possible after the taking of the oral statement" constituted prejudicial error, because any appreciable delay by the magistrate in reviewing the transcribed statement could very well result in memory loss to the detriment of the accused.

As an alternative procedure to the taking of a written affidavit to provide the underlying factual basis for a finding of probable cause upon which a search warrant may issue (see Pen. Code, § 1526, subd. (a)), Penal Code section 1526, subdivision (b), allows the taking of "an oral statement under oath which shall be recorded and transcribed." "The recording of the sworn oral statement and the transcribed statement is made a record of the court by either of the following procedures: (1) *Certification* by the magistrate and *filing* with the clerk. (2) *Recording* by a court reporter, and certification of the transcript by the reporter; the magistrate must also *certify* the transcript which must then be filed with the clerk." (Witkin, Cal. Criminal Procedure (1983 supp. pt. 2) § 991, p. 220.) The section provides in full: "(b) In lieu of the written affidavit required in subdivision (a), the magistrate may take an oral statement under oath which shall be recorded and transcribed. The transcribed statement shall be deemed to be an affidavit for the purposes of this chapter. In such cases, the recording of the sworn oral statement and the transcribed statement shall be certified by the magistrate receiving it and shall be filed with the clerk of the court. In the alternative in such cases, the sworn oral statement shall be recorded by a certified court reporter and the transcript of the statement shall be certified by the reporter, after which the magistrate receiving it shall certify the transcript which shall be filed with the clerk of the court."

In their notice of motion to dismiss and suppress evidence along with accompanying points and authorities filed on December 7, 1982, defendants asserted among their grounds for suppressing the fruits of the search of their residence, the failure of the magistrate to certify the transcript of Vil-

---

*See footnote, *ante,* page 25.

la's sworn oral statement as required by Penal Code section 1526. Plaintiff in points and authorities opposing the motions (filed Dec. 22, 1982), revealed both the original tape and the transcribed statement were on file with the court clerk and the magistrate's failure to certify the oral statement was a ministerial act, akin to a magistrate's failure to file promptly a search warrant, affidavit and inventory which would not invalidate an otherwise valid search warrant. (*People* v. *Emanuel* [1978] 87 Cal.App.3d 205.) Plaintiff's opposition also stated to its knowledge the transcription of the oral statement had been done, and that plaintiff would submit a certified copy of the certifications. Defendant's motion for reconsideration of the court's ruling to deny her suppression motion indicates defendant was shown the certification on the morning of December 24, 1982, the date her suppression motion was denied.

A. *Plaintiff's motion for judicial notice.*

██ Plaintiff now asks this court to take judicial notice pursuant to California Rules of Court, rule 41, and Evidence Code sections 452 and 459, of a sworn and certified court document entitled, "CERTIFICATION PURSUANT TO PENAL CODE SECTION 1526" and dated September 22, 1982 (some seven months after the issuance of the search warrant in this case), wherein Judge Gorelick declared he listened to the tape of the sworn oral statement and compared it line-by-line with the transcript of the recording and found that "the transcript was an accurate and complete rendition of the tape recording and [sworn] oral statement." The declaration also indicates that at the time the statement was given, the original of the tape recording and transcript had been in the custody of the Tulare-Pixley Municipal Court since the date of filing, June 9, 1982, or thereabouts, and available for inspection or copying by any party involved in criminal proceedings having anything to do with the documents. Also attached to respondent's motion for judicial notice is a letter from a clerk of the Tulare-Pixley Municipal Court dated February 9, 1984, indicating the original certification is in the court file.

██ Evidence Code section 452, subdivision (d), provides judicial notice may be taken of court records of any state court. In *People* v. *Preslie* (1977) 70 Cal.App.3d 486 [138 Cal.Rptr. 828], this court held judicial notice may be taken of such court records on file in the action before the trial court, though the records were not presented as evidence or relied upon by the trial court in the action below. (At p. 493.) However, an appellate court normally will not grant such a motion unless the matter has been presented to the court below, the substantive issues to which the document(s) relate are adequately raised, the originals remain on file and certified copies are forwarded to the appellate court. (*Id.*, at pp. 493-495.)

 Plaintiff has complied with each of the above requirements and its motion was served on defendant on February 21, 1984. Defendant had 10 days to respond (Cal. Rules of Court, rule 41(a)) and has failed to do so. The "[f]ailure of the adverse party to serve and file written opposition to any other motion may be deemed a consent to the granting of such motion." (Cal. Rules of Court, rule 41(c).) Defendant is deemed to have consented to the granting of the motion.

B. *The magistrate's failure to certify promptly the transcription of the sworn oral statement did not substantially prejudice the rights of defendant Gloria Meza and therefore does not constitute adequate grounds for invoking the exclusionary rule.*

 "Because the proceeding by a search warrant is a 'drastic one,' whose abuse led to the adoption of the Fourth Amendment itself, legislation regulating the process must be liberally construed in favor of the individual affected." *(Bowyer v. Superior Court* (1974) 37 Cal.App.3d 151, 164 [111 Cal.Rptr. 628]; *Sgro v. United States* (1932) 287 U.S. 206, 210 [77 L.Ed. 260, 262, 53 S.Ct. 138, 85 A.L.R. 108].) "Compliance with the requisites of the statute must be adhered to in order to insure adequate judicial supervision and control to preserve the constitutional guarantees. [Citation.] Technical defects in the procedure, however, do not invalidate the search [citation]." *(People v. Sanchez* (1982) 131 Cal.App.3d 323, 329 [182 Cal.Rptr. 430].) If the affidavit procedure is employed, it is required that there be substantial compliance with the constitutional requirements. (Witkin, Cal. Criminal Procedure, *supra,* § 990, p. 219.)

 Penal Code section 1538.5, subdivision (a), states a defendant may move to suppress evidence obtained as the result of a search or seizure on the following grounds: "(1) The search or seizure without a warrant was unreasonable.

"(2) The search or seizure with a warrant was unreasonable because (i) the warrant is insufficient on its face; (ii) the property or evidence obtained is not that described in the warrant; (iii) there was not probable cause for the issuance of the warrant; (iv) the method of execution of the warrant violated federal or state constitutional standards; (v) there was any other violation of federal or state constitutional standards."

A magistrate's failure to certify promptly the transcript of a sworn oral statement taken by him, which in turn constituted the affidavit in support of the issuance of a search warrant, would become grounds for granting a suppression motion only if the late certification violated federal or state constitutional standards. "The Fourth Amendment to the United States Con-

stitution provides simply that '. . . no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' Article I, section 1[3], of the California Constitution contains substantially identical language." (*People* v. *Chavez, supra,* 27 Cal.App.3d at p. 885.) Penal Code section 1525 restates the substance of the constitutional requirement: "A search warrant cannot be issued but upon probable cause, supported by affidavit." Originally, the written affidavit was a mandatory requirement[5] (see *Powelson* v. *Superior Court* (1970) 9 Cal.App.3d 357, 360 [88 Cal.Rptr. 8]), but in 1970 the Legislature enacted Penal Code section 1526, subdivision (b), and provision is now made for the alternative by a sworn oral statement.

The certification process employed by Penal Code section 1526, subdivision (b), ensures an accurate transcription of the oral statement be made. The importance of this is alluded to in *Charney* v. *Superior Court* (1972) 27 Cal.App.3d 888 [104 Cal.Rptr. 213]: "The sworn, recorded and transcribed statement which subdivision (b) permits to be used in lieu of a written affidavit, contemplates a word for word recording and transcription of what the witness has said. If the statement is made on a question and answer basis, both the questions asked and the answers given must be recorded and transcribed." (At p. 892.)

Regarding the constitutional due process rights of defendant, the certification requirement has a twofold purpose: to provide (1) defendant with an accurate transcription of the oral statement so appropriate challenges to its legal sufficiency might be made and (2) the reviewing court with an accurate record of the factual information considered by the magistrate in making the probable cause determination, without which meaningful review would be foreclosed. (See *Dunn* v. *Municipal Court, supra,* 220 Cal.App.2d 858, 873 [34 Cal.Rptr. 251]; compare *Kaylor* v. *Superior Court* (1980) 108 Cal.App.3d 451, 457 [166 Cal.Rptr. 598] [where the magistrate admitted he did not examine the entire affidavit which included a 155-page addendum, the appellate court could not conduct a meaningful review because of the uncertainty as to what the magistrate relied on in making the probable cause determination].)

Neither of the above constitutional purposes of the statute was implicated by the magistrate's dilatory certification of the sworn oral statement in this case. An accurate transcription of the oral statement was ensured when the magistrate listened to the recording, albeit seven months later, and

---

[5]An affidavit is defined as a "written declaration under oath." (Code Civ. Proc., § 2003.)

compared it line-by-line with the written transcription. The notice of certification was on file on December 22, 1982, prior to the conclusion of defendant's suppression hearing and was actually shown to defendant December 24 at that hearing and prior to the court's ruling. Defendant, however, did not request a continuance to examine the certification or oppose it in any way at the hearing. Moreover, the original tape and transcribed statement had been on file for seven months prior to the hearing, and available for defendant's examination. Defendant does not allege the tape recording was altered while in the municipal court file, or present any chain of evidence challenge to the authenticity of the tape at the time the magistrate made the comparison.

Although the statute itself prescribes no time limit, defendant invites our attention to the following language in *People* v. *Peck* (1974) 38 Cal.App.3d 993 [113 Cal.Rptr. 806], for support of her contention that prompt certification of the transcribed oral statement is required: "The transcription requirement of subdivision (b) of Penal Code section 1526 is not a condition precedent to issuing a warrant, and that duty, like the requirements of certification and filing with the clerk, may be performed at a later time so long as it is done promptly and the transcribed statement is available to any accused who wishes to challenge its sufficiency and the validity of the warrant." (*Id.,* at p. 999, fn. omitted.) The question before the court in *Peck* was whether a search warrant could be issued prior to the transcription of the sworn oral statement. The court held Penal Code section 1526, subdivision (b), does not require the transcription of the sworn oral statement prior to issuance of the warrant though the statute states " '[t]he transcribed statement shall be deemed to be an affidavit for the purposes of this chapter[,]' " and to hold otherwise would "stultify" the apparent purpose of the code section of encouraging and expediting the warrant process. (*Id.,* at p. 998.)

Defendant would have us interpret the language of *Peck* as mandating "prompt" certification and filing of the transcribed oral statement. Neither the statute nor the tenets of due process require this. To do so imposes an unnecessary technical procedure on the warrant requirement and a further constraint on the magistrate. Contrary to the implications defendant would have us derive from *Peck,* our courts have considered matters such as late filing of the search warrant, or even the magistrate's failure to sign the search warrant as clerical omissions which do not invalidate the search warrant. (See, e.g., *People* v. *Guillebeau* (1980) 107 Cal.App.3d 531, 555 [166 Cal.Rptr. 45] [officer's failure to file a full return of all property seized does not invalidate the warrant; the procedure outlined in Pen. Code, § 1537 regarding the filing of a return on the warrant with an accompanying inventory, and "similar statutory enactments [are] ministerial in nature and [do]

not invalidate the search warrant"]; *People* v. *Sanchez, supra,* 131 Cal.App.3d 323 [magistrate's failure to sign and file an original search warrant held inconsequential when a duplicate telephonic warrant signed by the peace officer was authorized by the magistrate (Pen. Code, § 1528)].) In *People* v. *Superior Court (Robinson)* (1977) 75 Cal.App.3d 76, 79 [141 Cal.Rptr. 917], the court held that a magistrate's failure to sign the search warrant itself was inconsequential because the record indicated the magistrate intended to sign the warrant at the time it was executed. The court so held even though the statute makes the signature requirement mandatory. (See Pen. Code, §§ 1523, 1528, 1529.)

In *Bowyer* v. *Superior Court, supra,* 37 Cal.App.3d 151, 162, the court considered the magistrate's 10-day delay "in certifying the transcript as a short-lived ministerial omission which did not amount to a material deviation from the statutory procedure." The *Bowyer* court's characterization of the magistrate's dilatory certification of the transcript as a "ministerial omission" is apropos to the instant case wherein the magistrate fully exercised his discretion in evaluating the merits of the search warrant application before issuing the warrant but through inadvertence failed to certify the transcript.

The role of the magistrate in issuing a search warrant was discussed in *Shadwick* v. *City of Tampa* (1972) 407 U.S. 345, 350 [32 L.Ed.2d 783, 788, 92 S.Ct. 2119]: "He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search. . . . If . . . detachment and capacity do conjoin, the magistrate has satisfied the Fourth Amendment's purpose." (See also *People* v. *Chavez, supra,* 27 Cal.App.3d 883, 886-887.)

The magistrate in this instance did examine the entire affidavit presented in the form of an oral statement, before concluding probable cause existed to issue a search warrant, which was prepared, signed and subsequently issued. The magistrate's failure to certify the transcribed oral statement was not a conscious attempt to circumvent the constitutional rights of the accused but a matter of oversight which was later corrected. ▓ "The suppression of the evidence is necessary in the case of a defective search procedure where required to deter—to compel respect for the constitutional guaranty in the only effective available way—by removing the incentive to disregard it and also to preserve the imperative of judicial integrity [citation]." (*People* v. *Sanchez, supra,* 131 Cal.App.3d 323, 329.) ▓ The purposes of suppression would not be served in this instance where the magistrate fully executed his constitutional duty with respect to the warrant function but inadvertently failed to certify a transcription of a sworn oral statement until a later date.

Although the preferred practice for the magistrate to have followed in this case would have been to certify the recording of the sworn oral statement and the transcribed statement so as to avoid any possibility of the loss or alteration of the taped statement, the failure to do so did not invalidate the search warrant, for the defendant did not "demonstrate prejudicial error resulting from the alleged procedural irregularity." (*People* v. *Chavez, supra,* 27 Cal.App.3d 883, 887.) We have examined "the entire cause" pursuant to article VI, section 13 of the California Constitution, and we find the error, if any, has not resulted in a miscarriage of justice.

III*

. . . . . . . . . . . . . . . . . . . . . . . .

Each of defendants' contentions is without merit.

The judgment is affirmed.

Andreen, Acting P. J., and Martin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 30, 1985.

---

*See footnote, *ante,* page 25.