COMMONWEALTH *vs.* PETER M. CHAMBERLIN.  June 24, 1986.  *Practice, Criminal,* Indictment, Probable cause hearing, Grand jury proceedings, Instructions to jury. *Homicide. Motor Vehicle,* Homicide. *Evidence,* Admissions and confessions. *Search and Seizure,* Affidavit, Automobile.

On an indictment charging the defendant with the murder in the first degree (G. L. c. 265, § 1) of one Cheryl Goodhue, the jury returned a verdict of guilty on the lesser included offense of manslaughter. The defendant was acquitted on an indictment arising out of the same event and charging him with unlawful possession of a dangerous weapon (G. L. c. 269, § 10[b]), nunchuks.[1] The defendant alleges numerous errors in the proceedings, but we find none and affirm the judgment.

There was evidence to show that on the morning of April 30, 1983, about 7:45, the victim was found face down in the dirt about thirty feet from a well at a water pumping station in Avon. She was naked from the waist down, bloodied and bruised about her hair, face, buttocks, and legs. Her right leg appeared to be broken. She was groaning but unable to respond to questions. The victim died about three hours later as a result of traumatic

---

[1] Nunchuks (nunchaku) are an Asian weapon consisting of two bars connected by a rope. The user holds one bar while swinging and hitting with the second.

and hemorrhagic shock from bleeding as a result of multiple fractures and injuries.

At trial, the prosecution and the defense met head on. The Commonwealth's theory of guilt (based upon the defendant's statement to the police, physical evidence, results of tests conducted thereon, and expert testimony) was that the defendant intentionally assaulted and beat the victim and repeatedly drove over her. The defendant's defense of accident was based upon his testimony, which he characterizes as consistent with the scientific and physical evidence throughout the trial. His testimony was to the following effect.

Prior to April 29, 1983, the defendant did not know the victim. He met her at a lounge that night, where they consumed what could be regarded as a large number of alcoholic beverages. When they left the lounge, they drove to the Avon Water Works, left the car, and engaged in sexual relations. The victim then laughingly told the defendant to give her $50 or she would accuse him of rape. Because the two had been joking with each other throughout the evening, the defendant did not take the remark seriously and told the victim to get dressed. He went back to his car and began driving about the area with the high beams of his headlights on, as if "spying" on the victim as she dressed. He was travelling at about forty-five miles an hour when he hit her. She was caught beneath the car, and when the defendant dislodged her, he thought she was dead. He left her there, drove to his residence, washed his car, and took a cold shower to "sober up."

1. There was no error in denying the defendant's motion to dismiss the indictments, which was based upon three grounds. (a) The defendant had no right to a probable cause hearing. See *Commonwealth* v. *Britt*, 362 Mass. 325, 330 (1972); *Commonwealth* v. *Crowe*, 21 Mass. App. Ct. 456, 473 (1986). The claim that the Commonwealth resorted to subterfuge to obtain a continuance of the scheduled probable cause hearing in order to obtain indictments (cf. *Commonwealth* v. *Raposa*, 386 Mass. 666, 669 n.8 [1982]); *Commonwealth* v. *Hinteleitner*, 391 Mass. 679, 680-683 [1984]) is contradicted by the transcript of the hearing on the Commonwealth's request for a continuance, which was sought because test results had not been received. Even if there could be stipulations to unknown facts and even if defense counsel's willingness to enter into such stipulations could be viewed as undermining the grounds or a continuance (but see *Commonwealth* v. *Bastarache*, 382 Mass. 86, 106 [1980]), we find no mention of any stipulation during the hearing on the request for a continuance. (b) The defendant alleges that in seeking the indictments, the Commonwealth presented "only one critical witness," State police Detective James H. Sharkey, and that Sharkey's testimony was "misleading and, in fact, not true." Sharkey testified that the victim's head wounds were "superficial" and appeared to be caused by a "blunt or round type instrument." When asked about the opinion of the pathologist concerning the wounds to the victim's head, Sharkey answered: "They believe they were consistent with the nunchuks"

found in the defendant's car. Reading Sharkey's grand jury testimony in its entirety, we conclude that the grand jury proceedings were free of defect. We also note that at trial, expert witnesses for both the Commonwealth and the defendant testified that the head wounds could have been caused by any number of blunt instruments, including nunchuks. See *Commonwealth* v. *Dilone*, 385 Mass. 281, 284 (1982); *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 338-339 (1983). To the extent Sharkey's testimony might be viewed as less than precise, see *Commonwealth* v. *Reddington*, 395 Mass. 315, 319-320 (1985). (c) We need not consider whether the Commonwealth failed to preserve physical evidence when it returned the automobile to the true owner, a car rental company. As the defendant wanted to inspect the car for evidence to rebut any claim that the victim's head wounds were caused by nunchuks, and as the defendant was acquitted of the charge of possessing nunchuks, the issue becomes irrelevant. Were it necessary to decide the question, we would find no prosecutorial misconduct for substantially the same reasons as those set out in the memorandum of decision of the judge who denied the motion.

2. As we read the defendant's somewhat diffuse argument concerning the denial of his motion to suppress the statements he gave to Sharkey, his real complaint is with the findings of fact made by the judge who denied the motion. However, our review of the transcript of the hearing on the motion reveals no "clear error." *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980). The findings of fact that: (a) the police located the defendant the afternoon of April 30th where he was working on a roof; (b) the defendant was able to descend a ladder to speak with the police, notwithstanding his claim that he had been drinking; (c) the police advised the defendant of his Miranda rights, and he indicated that he knew and understood those rights; (d) the defendant first gave the police an exculpatory statement; (e) the defendant telephoned and spoke with an attorney who advised him to remain silent; (f) the defendant told the police of the advice he had received, and they then told him to remain silent until he was represented by counsel; (g) the defendant next proceeded to give an inculpatory statement; and (h) when the defendant's attorney and sister arrived at the police station, the defendant acquiesced in the relating of his statement to them by the police; all support the judge's ultimate conclusions that the defendant knowingly and intelligently waived his right to counsel and voluntarily made inculpatory statements. See *Commonwealth* v. *Sires*, 370 Mass. 541, 544-545 (1976); *Commonwealth* v. *Watkins*, 375 Mass. 472, 483-485 (1978); *Commonwealth* v. *Richmond*, 379 Mass. 557, 560 (1980). The defendant's asserted instances of trickery and cajoling by the police do not rise to the level of justification for suppression of his statements. See *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 265-266 (1982); *Commonwealth* v. *Pennellatore*, 392 Mass. 382, 386-388 (1984).

3. It follows from the conclusions above that the defendant's statements to the police were knowingly, intelligently, and ·freely made after a valid

waiver of his Miranda rights, that the police properly relied upon those statements in asserting probable cause to search his residence and the car. The warrants are free of defects. (a) Our study of the warrant authorizing the search of the car, the face sheet to the supporting affidavit, and each of the sheets attached thereto, shows the name James Sharkey (or his initials). There can be no doubt from these papers that he was the affiant and the applicant, that he appeared before the clerk, and that he swore to the truth of the statements set out in his affidavit. That the clerk, in signing the jurat, failed to insert Sharkey's name in the space provided in the jurat, immediately beneath Sharkey's signature, does not invalidate the warrant. See *Commonwealth* v. *Sheppard*, 394 Mass. 381, 390 (1985). Cf. *Commonwealth* v. *Young*, 6 Mass. App. Ct. 953, 954 (1978). (b) We think that the defendant's acquittal on the indictment brought under G. L. c. 269, § 10(*b*), makes it unnecessary for us to consider his claim that the nunchuks were illegally seized from the trunk of the car. In any event, the police searched the car pursuant to a valid warrant. The fact that the warrant did not on its face authorize seizure of the nunchuks or any other instrument is here irrelevant. See *Commonwealth* v. *Bond*, 375 Mass. 201, 208 n.8 (1978). (c) The affidavit in support of the warrant authorizing a search of the defendant's residence does not, contrary to the defendant's allegation, contain an intentionally false and material statement, that is, that the defendant left the water station area and drove to his residence "to clean up." The affidavit reads: "Chamberlin then drove to his house at 26 King Street, Avon, where he resides with his wife. He took a shower, washed the blood off his hands and changed his clothes." Further, in view of the defendant's testimony at trial (he left the area and drove to his residence where he washed the blood from "all over the front" of the car, saw his hands and clothes and "realized what had happened," took a "cold shower trying to sober" himself up, and then sat on his bed all night wrapped in a blanket), we are surprised that this argument has been advanced.

4. Assuming without considering the unlikely proposition that it was error to allow the pathologist to testify to the effect that the victim's head wounds could have been caused by blows from nunchuks, any error was harmless beyond all doubt, as should be apparent from the defendant's acquittal on the charge that he possessed nunchuks.

5. Vehicular homicide, G. L. c. 90, § 24G, is not a lesser included offense of murder in the first degree, see *Commonwealth* v. *Jones*, 382 Mass. 387, 392-395 (1981), and the defendant was not entitled to a jury instruction on the theory that the Commonwealth had abused its prosecutorial discretion by indicting the defendant under G. L. c. 265, § 1, rather than G. L. c. 90, § 24G. Not only does the defendant not address the dangerous proposition inherent in his argument, that a judge may somehow instruct the jury on a crime for which the defendant has not been charged, he makes no showing of an abuse of indictment powers. He would be hard put to do so in view of his statements to the police and the autopsy report, as well as

the other evidence we need not repeat. In seeking the indictments, the Commonwealth was not required to accept those aspects of the defendant's statements which, if believed by a jury, would reduce the crime charged. Compare *Commonwealth* v. *Gagliardi,* 21 Mass. App. Ct. 439, 447 (1986), where the Commonwealth's evidence tended to indicate that the defendant had been over indicted for purposes of a "compromise" verdict.

6. It is well settled that a trial judge is not required to instruct a jury in the terms requested by the defendant so long as the substance of the requested instruction is adequately covered. See *Commonwealth* v. *Lowe,* 391 Mass. 97, 109 (1984), and cases cited therein. The trial judge correctly and adequately instructed the jury on the issue of accident but refused to instruct that "conduct such as leaving the victim without obtaining medical aid may be considered as wanton and reckless conduct but not as an indication of either cruelty and atrocity or premeditation." In view of the verdict, we do not consider the argument.

*Judgment affirmed.*

*Kevin J. Reddington* for the defendant.

*William D. Delahunt,* District Attorney, *& Stephanie Martin Glennon,* Assistant District Attorney, for the Commonwealth, submitted a brief.