COMMONWEALTH vs. ANTHONY PELLEGRINI.

Middlesex.  February 7, 1989. — June 12, 1989.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Constitutional Law*, Search and Seizure. *Search and Seizure*, Warrant.

The inadvertent failure of a judge to sign a valid search warrant was a
   ministerial error that did not nullify the warrant. [87-91] LIACOS, J.,
   dissenting.

COMPLAINT received and sworn to in the Newton Division
of the District Court Department on August 7, 1985.

In the jury session of the Cambridge Division, a pretrial
motion to suppress evidence was heard by *Robert H. Bohn,
Jr.*, J., and the case was heard by *Neil J. Walker*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Jamie Ann Sabino* for the defendant.

*Edward D. Rapacki*, Assistant District Attorney, for the
Commonwealth.

ABRAMS, J. The defendant appeals from his convictions for
possession of fireworks and illegal storage of fireworks, G. L.
c. 148, §§ 39, 40. The sole question on appeal is whether the
motion judge erred in denying the defendant's motion to sup-
press evidence which was seized pursuant to a warrant the
issuing judge intended to sign but, in fact, failed to sign. We
transferred the case to this court on our own motion. We affirm
the convictions.

The facts are not in dispute.[1] On June 28, 1985, police
officer Francis X. Fall applied to the Newton District Court

---

[1] On April 29, 1986, the Commonwealth and the defendant filed an
"agreed statement of facts filed in lieu of hearing on defendant's motion to
suppress evidence." At trial, a statement of essentially the same agreed
facts was read into the record.

for a warrant authorizing the search of a garage at 19 Dunstan Street in Newton. A District Court judge reviewed Officer Fall's affidavit in support of the application for a search warrant.[2]

Fall's affidavit consisted of two parts: a form affidavit with the particulars filled in by Fall, and a two-page, typed affidavit containing Fall's testimony concerning probable cause. The form affidavit incorporated the typewritten affidavit by reference. In the presence of the judge, Fall signed both documents. The judge signed both documents, attesting that the officer swore to the truth of their contents in front of the judge. The judge then handed Fall the warrant authorizing the search, and said, "You have a good warrant." At this point, the judge intended that the warrant issue, but he failed to sign the warrant.

The judge retained the signed affidavits. See G. L. c. 276, § 2B (1986 ed.). Fall took the warrant and went to the garage at 19 Dunstan Street with an assistant district attorney. He presented the warrant to the defendant. The defendant told Fall that the warrant was not signed. Fall told the defendant that he knew the warrant was good; he had just come from the judge, who had assured him that he had a "good warrant." Fall told the defendant the name of the judge. Despite an objection from the defendant, Newton police officers entered and searched the garage. The officers found and seized thirty-six boxes of class C explosives. Afterward, Fall went back to the District Court and returned the warrant. The unsigned warrant was then returned to the judge, who signed it.

The defendant does not dispute the fact that the affidavit established probable cause to search the garage and that there

---

[2] Fall attested to the following facts to establish probable cause. He saw the defendant and Dominic Bianchi, Jr., loading into a truck boxes from the garage at 19 Dunstan Street. Both men were known to deal in fireworks. Fall telephoned the canine division/bomb squad of the police department. That division sent an experienced officer, along with a dog trained to detect explosives odors. Other officers arrived at the garage before Fall did. These other officers saw numerous boxes labeled with an orange sticker which is known to warn of explosives. The defendant told the officers that they were fireworks, and said that he had no license for them. Further, the trained dog acted in such a manner as to indicate that there were explosives in the garage.

were no defects in the warrant as to the description of items, the description of the place to be searched, and the execution of the warrant. The defendant does argue that the judge's failure to sign the warrant rendered the warrant a nullity and that therefore the search was a warrantless search not justified by exigent circumstances. The Commonwealth argues that the inadvertent failure of the judge to sign the warrant was a ministerial error which did not nullify the warrant. We agree with the Commonwealth.

Ministerial errors do not nullify search warrants. See, e.g., *Commonwealth* v. *Truax*, 397 Mass. 174, 181-182 (1986) (inadvertent deletion of words "there is probable cause" from the warrant). *Commonwealth* v. *Wilbur*, 353 Mass. 376, 381 (1967), cert. denied, 390 U.S. 1010 (1968) (absence of the teste of the first justice of the court); *Commonwealth* v. *Chamberlin*, 22 Mass. App. Ct. 946, 949 (1986) (failure to place name of affiant in the proper space on his affidavit beneath the affiant's signature). *Commonwealth* v. *Young*, 6 Mass. App. Ct. 953 (1978) (failure of police officer to sign affidavit). *Commonwealth* v. *Hanscom*, 2 Mass. App. Ct. 840 (1974) (omission of affiant's name and date in the acknowledgement of the affidavit). Further, we said that the failure of a clerk of court to sign a civil writ, as required by the State Constitution, was a defect of form capable of amendment. See *Austin* v. *Lamar Fire Ins. Co.*, 108 Mass. 338, 340 (1871).

These cases indicate that a failure to sign an otherwise valid warrant, in a situation where there is no question that the judge intends to issue the warrant, should be deemed a ministerial defect which does not invalidate the warrant. Some courts have so held. See, e.g., *United States* v. *Turner*, 558 F.2d 46, 50 (2d Cir. 1977); *Yuma County Attorney* v. *McGuire*, 109 Ariz. 471, 472-473 (1973); *People* v. *Sanchez*, 131 Cal. App. 3d 323, 329 (1982); *People* v. *Superior Court*, 75 Cal. App. 3d 76, 79 (1977);[3] *Sternberg* v. *Superior Court*, 41 Cal. App. 3d

---

[3] In *People* v. *Superior Court*, *supra*, the court emphasized that the police officer did not realize that the warrant was unsigned before executing the search. Therefore, the unsigned warrant did not conflict with "[a] secondary purpose" of the law: "appris[ing] the householder that the search had been

281, 291-292 (1974); *State* v. *Spaulding*, 239 Kan. 439, 447 (1986). Other courts hold that failure to sign a warrant invalidates the warrant and renders its issuance a nullity. See, e.g., *State* v. *Surowiecki*, 184 Conn. 95, 97 (1981); *Byrd* v. *Commonwealth*, 261 S.W.2d 437, 438 (Ky. 1953); *People* v. *Hentkowski*, 154 Mich. App. 171, 177-178 (1986); *State* v. *Spaw*, 18 Ohio App. 3d 77, 79 (1984).[4] We conclude that, where, as here, there is no dispute that the judge intended to issue the warrant, and the judge signed the officer's affidavit, the failure to sign the warrant "is no more than a clerical error." *Commonwealth* v. *Truax*, *supra* at 182.[5]

The Fourth Amendment to the United States Constitution requires that "no warrant shall issue, but upon probable cause,

---

authorized by a magistrate." *Id.* at 80. In the case before us, the defendant and the officers noticed before the search that the warrant was unsigned. However, the court in *People* v. *Superior Court*, *supra*, was analyzing the policies underlying not only the Fourth Amendment but also "the California statutes which prescribe the methods of the issuance of search warrants." *Id.* at 80. California statutes explicitly provide that a warrant must be "*signed* by a magistrate" (emphasis added). *Id.* at 79. Massachusetts has no analogous language in its search warrant statute. See G. L. c. 276, §§ 1 et seq. (1986 ed.). At least in this case, where Fall told the defendant the name of the judge who had authorized the search before he entered the premises, no substantial rights of the defendant have been affected by the lack of signature on the warrant at the time of the search.

[4] Courts of some jurisdictions with State statutes which explicitly provide that warrants must be signed have concluded that a signature is necessary for the warrant to be valid. See *State* v. *Surowiecki*, *supra* at 100 (Shea, J., dissenting), and cases cited.

[5] The dissent states that the cases from other jurisdictions do not support the conclusion we reach. See *post* at 92 note 1. The dissent fails to recognize that these cases conclude, as we do, that an unsigned warrant is not always invalid. Two of these cases, one Federal and one from California, deal with telephonic warrants. The Federal decision is based on the principle that the signing of the warrant is a "purely ministerial task." *United States* v. *Turner*, *supra*. The California case relies on older cases for the proposition that "the inadvertent absence of a magistrate's signature on the traditional warrant . . . does not invalidate the warrant." *People* v. *Sanchez*, *supra*. A candid examination of the other three cases discussed by the dissent demonstrates that the cases, in fact, support our conclusion. The attempted distinctions are not persuasive. See, e.g., *Yuma County Attorney* v. *McGuire*, *supra*, citing *Commonwealth* v. *Wilbur*, 353 Mass. 376 (1967). *People* v. *Superior Court*, *supra* at 79. *State* v. *Spaulding*, *supra*.

supported by oath or affirmation, and particularly describing the place to be searched and the things to be seized." The defendant does not dispute that the judge intended to issue the warrant, that there was probable cause to support the warrant, and that the warrant described the place to be searched and the items to be seized with sufficient particularity. There is no Federal requirement either under the Fourth Amendment or case law from the United States Supreme Court which requires that a judge sign the actual warrant. Where, as here, the judge's name as the official who took the affiant's oath appears on the affidavit on which the warrant is based, where the judge said to the officer, "[You have] a good warrant," and where all the other Federal requirements are met, we think the warrant is valid as a matter of Federal law. "As long as the [judge] in fact performs the substantive tasks of determining probable cause and authorizing the issuance of the warrant, the [Fourth A]mendment is satisfied." *United States* v. *Turner, supra* at 50.

Although the State Constitution and Massachusetts statutory law provide that the warrant must issue, neither one explicitly provides that the warrant must be signed. See art. 14 of the Massachusetts Declaration of Rights; G. L. c. 276, §§ 1-2B (1986 ed.). Despite this fact, and despite the plain meaning of the word "issue," the dissent asserts that "the judge could not 'issue' the search warrant until he signed the document." *Post* at 92. This conclusory proposition has no basis in the language of the State Constitution or statutes. The words "issue" and "sign" are not synonomous. If the Legislature wished to make the signing of warrants a requirement without any exception, it could have done so explicitly.

We recognize that the accepted practice is for persons authorizing search warrants to sign the warrants and for police officers and the public to rely on signed warrants. The signature of the authorizing official affords the householder notice that there was official authorization for the warrant. The signature makes the person whose premises are to be searched aware that he or she may have a judicial remedy if police abuse the warrant's dictates. It also impresses on the person authorizing the search the seriousness of what is being ordered. For these

reasons, as a general rule, warrants must be signed by the authorizing authority.

Nevertheless, here the judge signed the affidavit supporting the warrant, and told the police officer that he had "a good warrant."[6] Before executing the search, the police officer told the defendant the name of the judge who authorized the warrant. Further, the police did not exceed the authority of the warrant in any respect in its execution or return. In these narrow circumstances, where there is no dispute the judge intended the warrant to issue when he handed it to Fall, the defendant's motion to suppress properly was denied.

*Judgments affirmed.*

LIACOS, J. (dissenting). The court today rules, *ante* at 88, that a search warrant, which a judge inadvertently failed to sign, is valid because the absence of the judge's signature "should be deemed a ministerial defect which does not invalidate the warrant."[1] I dissent.

---

[6] The dissent correctly notes that we have not adopted under State law the "good faith" doctrine of *United States* v. *Leon*, 468 U.S. 897, 906-907 (1984). See *Commonwealth* v. *Treadwell*, 402 Mass. 355, 356 n.3 (1988). We do not do so in this case. The Federal good faith doctrine concerns only the propriety of excluding evidence obtained "pursuant to a subsequently invalidated warrant." *United States* v. *Leon*, *supra* at 918. The *Leon* case assumes a violation of the Fourth Amendment. Because we rule that the warrant in question was valid, there is no basis for discussing the exclusionary rule or any Federal exception to the exclusionary rule.

[1] The court cites six cases to support the proposition that an otherwise valid search warrant is not invalidated by the lack of a judge's signature. *Ante* at 88-89. The court fails to point out that two of those cases involve telephonic search warrant statutes which explicitly allow telephonic judicial approval and provide other safeguards against unreasonable searches and seizures. See *United States* v. *Turner*, 558 F.2d 46 (2d Cir. 1977); *People* v. *Sanchez*, 131 Cal. App. 3d 323, 329 (1982). In another case, *Yuma County Attorney* v. *McGuire*, 109 Ariz. 471 (1973), the court assesses the validity of an unsigned search warrant in light of the fact that the State legislature has authorized the use of telephonic search warrants.

In *People* v. *Superior Court*, 75 Cal. App. 3d 76, 80 (1977), another case cited by the court, the affiant testified that the judge signed numerous duplicate copies of the search warrant, but not the original. No such allega-

A search warrant unsigned by a judge is a nullity, void on its face, and void ab initio. *Kelley* v. *State*, 55 Ala. App. 402, 403 (1975). *State* v. *Vuin*, 185 N.E.2d 506, 510 (Ohio Ct. C.P. 1962). See *State* v. *Spaw*, 18 Ohio App. 3d 77, 79 (1984). Such a warrant is invalid because "it shows on its face that it lacks the signature of any [judge or] magistrate, such being the only authorized officer to put life in the paper." *Kelley* v. *State, supra* at 404.

Article 14 of the Massachusetts Declaration of Rights states that "no warrant ought to be *issued* but in cases, and with the formalities prescribed by the laws" (emphasis added). Similarly, G. L. c. 276, § 1, commands an authorized court or justice to "*issue* a warrant" if satisfied that there is probable cause to do so (emphasis added). G. L. c. 276, § 1 (1986 ed.). A judge or magistrate "issues" a warrant only when he or she signs the appropriate document and entrusts it to the proper person. *People* v. *Hentkowski*, 154 Mich. App. 171, 177 (1986). Although the parties here have stipulated that the judge intended to sign the warrant but failed to do so by inadvertence, I conclude that the judge could not "issue" the search warrant until he signed the document. "[A] lawful signature on the search warrant by the person authorized to issue it [is] essential to its issuance." *State* v. *Surowiecki*, 184 Conn. 95, 97 (1981) (citing various authorities for the proposition). See *People* v. *Hentkowski, supra* at 177 (judge inadvertently failed to sign warrant).

It has been stated that "[c]ourts never regard lightly the extraordinary and unusual procedure authorized by search warrants and are ever mindful of the constitutional guarantee to citizens to be free from unreasonable search and seizure." *State*

---

tion is made here. Furthermore, that court specifically ruled that the unsigned warrant was not invalid because no confrontation occurred between the householder and the police officer executing the warrant.

Also cited by the court is *State* v. *Spaulding*, 239 Kan. 439 (1986). Kansas has a statute stating that evidence shall not be suppressed because of technical irregularities in a search warrant. Neither the Massachusetts statutory scheme nor art. 14 of our Declaration of Rights has a similar provision. See G. L. c. 276, §§ 1 et seq. (1986 ed.).

In my view, none of these cases supports the court's ruling.

v. *Cochrane*, 84 S.D. 527, 530 (1970), quoting *Byrd* v. *Commonwealth*, 261 S.W.2d 437, 438 (Ky. 1953). "[S]tatutes authorizing and regulating searches and seizures and the issuance of search warrants are strictly construed against the state and liberally in favor of the individual." *State* v. *Cochrane, supra* at 531.

The signature requirement is supported by policy considerations concerning three sets of actors — judges, police officers, and the public. A judge's signature on a search warrant serves as an "identifiable objective manifestation" of the judge's subjective intent to issue a search warrant. *State* v. *Surowiecki, supra* at 97. The signature requirement impresses upon a judge the seriousness and importance of issuing a search warrant. *People* v. *Hentkowski, supra* at 178.

Furthermore, the potential for abuse and police misconduct in allowing unsigned warrants is clear. *Id.* Because officers who execute a search warrant must limit their search to the dictates of a warrant, they must first review the document. *Id.* Police officers cannot reasonably rely upon an unsigned document as authority to conduct a search. *Id.* at 178-179. *State* v. *Spaw*, 18 Ohio App. 3d 77, 79 (1984). The signature requirement is not overly burdensome to police officers who can take corrective measures and thereafter conduct the search. *People* v. *Hentkowski, supra* at 178.

Lastly, the signature requirement protects and assures persons in control of property which is to be searched. When such persons are presented with a document which purports to be a search warrant, they must be able to review the document and determine whether to allow the search. "The custodian should not have to guess as to whether a magistrate intended . . . to sign the document which is presented to the custodian." *Id.* at 179. See *People* v. *Superior Court*, 75 Cal. App. 3d 76, 80 (1977) (stating that secondary purpose of search warrant is to apprise householder that search has been authorized by magistrate).

There is no allegation in this case of wrongdoing either on the part of the police officer or the judge; this was simply a case of inadvertence. There was, however, a confrontation

between the defendant and the officer executing the search warrant that illustrates one of the deficiencies of an unsigned search warrant. The defendant called to the officer's attention the fact that the search warrant was not signed and was therefore not valid to search the garage. The officer told the defendant that he knew the warrant was good and that he just came from the judge who had told him that he had a good warrant.[2] The defendant advised the officer that the police could not enter the premises with an unsigned warrant and that if they did, the defendant would sue. Nevertheless, the officers proceeded to search the premises. The court glosses over this confrontation and simply states that "no substantial rights of the defendant have been affected by the lack of signature on the warrant at the time of the search" because the officer told the defendant the name of the judge who authorized the search. *Ante* at 89 n.3. I disagree. A property owner has the right, under art. 14, to obtain the protection of a warrant signed by a judge.

I would invalidate the defective search warrant and would suppress the evidence.

---

[2] I am not comforted by the fact that the judge told the police officer in this case that he had a good warrant. This court has not yet ruled on the relevance of an officer's subjective "good faith" intent. See *Commonwealth v. Sheppard*, 394 Mass. 381, 391-393 (1985); *United States v. Leon*, 468 U.S. 897, 906-907 (1984). In *Leon*, the good faith exception was applied where the warrant was facially valid. This is not so here. I note also that two courts have held the "good faith" exception to the exclusionary rule cannot apply to an unsigned search warrant because the defect is readily apparent on the face of the instrument. *State v. Spaw*, 18 Ohio App. 3d 77, 78-79 (1984) (officers executing unsigned warrant could not be acting in good faith). See *Miller v. State*, 703 S.W.2d 352, 355 (Tex. App. 1985).