STATE

v.

Robert E. NERI.

No. 90–166–C.A.

Supreme Court of Rhode Island.

June 25, 1991.

**954**

John J. Hogan, Sp. Asst. Atty. Gen., Jeffrey J. Greer, Asst. Atty. Gen., Providence, for plaintiff.

Paul Rosin, Asst. Public Defender, Barabra Hurst, Chief Appellate Atty., Richard M. Casparian, Public Defender, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This case is before us on an appeal by the defendant, Robert E. Neri, from a conviction of robbery in Superior Court. Because Robert Neri's cousin, Paul Neri, is also included among the individuals mentioned in this opinion, we shall refer to each of the two cousins by his first name. Before reaching the merits of Robert's appeal, we believe a brief recitation of the relevant facts is in order.

On August 12, 1983, Teresa Borges (Borges) was working as a cashier at the Johnston Sunoco Station on Putnam Pike in Johnston. At approximately 2 p.m. there was a lull in business activity at the station, so Borges perused a magazine to while away the time as she sat in the glass-enclosed cashier's booth. She noticed a man approaching the booth from the rear, but the man did not come to the booth window. Less than a minute later, however, she saw the same man to her right, at the window. When Borges opened the window and inquired how she could be of assistance, he informed Borges that this "was a hold up." Because the man "looked very calm" and she "hadn't seen a gun or anything," Borges thought the man was joking and asked, "Really, what can I do for you?" At this point, the man pulled a revolver from the vicinity of his waist and pointed it at Borges's face through the glass, ordering her to open the door to the booth.

While reaching under the counter for the keys, Borges activated a silent alarm. The man entered the booth and directed Borges to open the register and hand him the money, at which time he returned his gun to his waistband, took the money as Borges handed it to him, and stuffed it into his pockets. The man also requested that Borges open a floor safe that was concealed on the other side of the booth. When Borges informed the man that she did not know the combination, the man directed Borges into the back room of the booth and courteously informed her that she "could call the cops when he'd gone." As soon as the man left, Borges telephoned the police who promptly arrived on the scene.

Borges had kept her eyes on the man's face throughout the course of the robbery, hoping to detect "whether or not he was going to become violent." Thus, when the police arrived she was able to give a description of the robber and, at the Johnston police station, was able to assist in compiling a composite drawing of the man who had robbed her. Relying on the composite

drawing, police were able to assemble a photographic array consisting of eight black-and-white photographs of subjects with similar features. After examining the photos, Borges selected a photograph of Robert. At a bail hearing in 1987 and again at Robert's trial in 1989, Borges also made in-court identifications of Robert as the person who had robbed her.

On appeal Robert asserts that the trial justice committed reversible error on several occasions and asks that we reverse his conviction and remand the case to Superior Court for a new trial. We believe, however, that only one of Robert's contentions merits consideration. More specifically, Robert asserts that "the trial justice erred when, over objection, he permitted the state to elicit testimony that Paul Neri, an important defense witness, had been arrested on charges of possession of narcotics and for drinking while driving." Robert testified that on the date of the robbery he was living with his family in West Palm Beach, Florida. In late July 1983, according to Robert, he was in Rhode Island for a wedding and stayed with a friend for approximately one week before telephoning his mother in Florida for airfare home. Robert claimed that he flew out of Logan Airport on Delta Airlines and was back in West Palm Beach at work on August 12, 1983. Robert stated that he attempted to obtain documentation from the airlines and from his former employer in Florida in order to verify his whereabouts on August 12, 1983, but was unsuccessful in his efforts.

Robert also testified that he remembered the day in question with some particularity because he received a call at approximately 7 p.m. from his cousin Paul, who then resided in Johnston, Rhode Island. According to Robert, Paul telephoned to inform him that Paul had been called into the police station and was questioned about a robbery that had occurred in Rhode Island. Paul also told Robert that the police were interested in his whereabouts and wished to question him as well. Robert's mother, Marilyn, also testified that her son was present in Florida on the date of the rob-

bery and that Robert did receive a phone call from his cousin that evening.

In rebuttal the prosecution called Detective Melvin Steppo (Steppo) of the Johnston police who, at first, testified that there was nothing in Robert's file indicating that Paul was questioned by the police regarding the robbery. After examining the file more closely, Steppo admitted on cross-examination by defense counsel that Paul had been arrested and brought into the station on August 12, 1983. On re-direct examination, the prosecution inquired about the time of the arrest and the nature of the charges brought against Paul. Steppo testified that the police report indicated that Paul was not arrested until 9:42 p.m. that evening. Over defense counsel's objection Steppo further testified that Paul was arrested for possession of narcotics and possession of an open liquor container in a vehicle. Counsel for defendant then introduced evidence showing that both charges against Paul were later dismissed.

Robert now argues that the trial justice committed reversible error by allowing into evidence testimony concerning Paul's arrest on charges relating to narcotics and alcoholic beverages. Before embarking on our analysis, however, we would first point out that Robert's argument on appeal takes a different tack from that advanced by his attorney at trial. Whereas the trial record reveals that Robert's trial attorney's objection to the controversial testimony was based solely on its potentially overly prejudicial effect on the jury, on appeal Robert asserts that evidence of the charges on which Paul was arrested was altogether irrelevant.

■ Rule 103(a) of the Rhode Island Rules of Evidence states:

"*Rulings on Evidence.*—(a) *Effect of Erroneous Ruling.* Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if

the specific ground was not apparent from the context."

When construing this provision, this court has often said that when, at trial, the introduction of evidence is objected to for a specific reason, other grounds for objection are waived and may not be raised for the first time on appeal. *See State v. Gordon,* 508 A.2d 1339, 1347 (R.I.1986); *State v. Ucero,* 450 A.2d 809, 815 (R.I.1982). However, even if we were to overlook this potentially fatal procedural defect and proceed directly to a substantive analysis of Robert's appeal, we are of the opinion that Robert's arguments must also fail on the merits.

■ Rule 401 of the Rhode Island Rules of Evidence defines "relevant evidence" as that "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The well-settled rule in this jurisdiction is that the admission or exclusion of evidence on grounds of relevancy is within the discretion of the trial justice, and absent a showing of abuse of this discretion this court will not disturb a ruling on the admissibility of evidence. *See McKenna v. St. Joseph Hospital,* 557 A.2d 854, 858 (R.I.1989).

■ In the case before us Robert testified that he was in Florida on the day the robbery occurred and presented testimony that, on the same day, he received a telephone call in Florida from his cousin Paul who informed Robert that he had been questioned by police regarding the robbery and that they wished to speak with Robert about it. After Steppo stated during questioning by the prosecution that nothing in the police's robbery-investigation file indicated that Paul was ever questioned by the police in relation to the robbery, defense counsel, on cross-examination, was able to elicit from Steppo the fact that Paul indeed had been arrested and brought to the station on August 12, 1983. When the prosecution, on re-direct examination, inquired about the time of the arrest and the nature of the charges on which the arrest was predicated, the trial justice allowed Steppo to respond despite defense counsel's objection. We do not believe the trial justice abused his discretion in doing so.

We are of the opinion that the evidence clearly was relevant because, as the state succinctly suggests, the "state was attempting to discredit Robert Neri's testimony that five hours after the robbery, he received a phone call in Florida from his cousin in which the robbery was discussed. In order to do this, it was necessary to show not only that Paul had not been brought into the station until late that evening, but that he had been arrested on charges completely unrelated to the robbery." Indeed, these sentiments were echoed in the statements made by the trial justice while instructing the jury on the purpose the evidence of Paul's arrest charges should serve:

"Now, ladies and gentlemen, in a criminal trial, evidence is admissible to prove that a person has been convicted of a crime for the limited purpose of determining the credibility of that witness and the weight you, the jury, wish to give the testimony of a witness who has been convicted of a crime.

"The fact that a person has been arrested for a crime generally is not admissible * * *. [T]he circumstances of this case [are] different, however. The issue as brought out appears to be whether or not [Paul] was even at the Johnston Police Station on August 12, 1983, and as a result of that, [whether] he did call [Robert] in Florida and told him that he was being sought by the Johnston Police for robbery.

"So we are just trying to put everything in perspective so you will understand (a) how Paul Neri got to the police station [and] (b) for what reason."

Despite these remarks by the trial justice, Robert, to support his contention that the evidence concerning the nature of the charges for which Paul was arrested was irrelevant, directs our attention to several cases decided by this court in which we ruled that the admission of evidence relating to a defendant's drug or alcohol use or possession was overly prejudicial and total-

ly irrelevant in situations in which such evidence was in no way necessary to prove or disprove a defendant's guilt or innocence and bore no relation whatsoever to any of the crucial issues in the case. *See, e.g., State v. DiPrete,* 468 A.2d 262, 266 (R.I. 1983); *State v. Burke,* 427 A.2d 1302, 1304 (R.I.1981); *State v. Sfameni,* 115 R.I. 18, 24, 339 A.2d 742, 745 (1975). We believe, however, that Robert's reliance on the cases cited does little to further his cause.

 As we have already discussed, the evidence in question before us, unlike the evidence presented in the cited cases, was indeed relevant and necessary to discredit Paul's testimony by showing the time and the nature of Paul's visit to the Johnston police station on August 12, 1983. With respect to the alleged prejudicial effect of the proffered testimony, we would first point out that here, unlike the cases cited by Robert, any prejudice that may have resulted affected Paul only and not Robert himself. We believe, however, that the remarks of the trial justice contained in his curative instruction, made immediately after the introduction of the evidence, were wholly sufficient to alleviate the prejudicial taint, if any, that may have inured to Robert:

> "The fact that a person has been arrested for a crime is generally not admissible, because a person could be not guilty or for any other reason, so we basically limit testimony about convictions to only actual convictions of a crime.
>
> "In the circumstances of this case, however, the reason for the introduction of this type of evidence is not to prove that [Paul] is a bad person because * * * he was arrested for having possession of narcotics or having an open container of alcohol. Generally, the fact that he was arrested would not be brought to your attention. * * *
>
> "I am going to let in evidence that the charges against [Paul] * * * were dismissed. So he's never been convicted * * *.
>
> "It's just to put in context why he was even at the police station, why he was questioned or not questioned, what time he was there, and then you can consider that testimony in determining the credibility of [the other] witnesses who have been called to testify."

The trial justice later read into the record a certified copy of the District Court's dismissal of the charges against Paul.

Our consideration of the record indicates that the trial justice correctly admitted the questioned relevant testimony into evidence and properly eliminated the potential for unfair prejudice through the use of a curative jury instruction. Accordingly the defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.