STATE

v.

Barbara HUGUENIN.

No. 94–114–C.A.

Supreme Court of Rhode Island.

July 31, 1995.

Jeffrey B. Pine, Atty. Gen., Jane McSoley, Aaron L. Weisman, Asst. Attys. Gen., Providence, for plaintiff.

Richard Casparian, Public Defender, Catherine Gibran, Stephen Peltier, Paula Rosin, Asst. Public Defenders, for defendant.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on appeal by the defendant, Barbara Huguenin (Huguenin or defendant), from a judgment of conviction entered in the Superior Court for carrying a weapon while under the influence of liquor in violation of G.L.1956 (1981 Reenactment) § 11–47–52 and for driving while intoxicated in violation of G.L.1956 (1982 Reenactment) § 31–27–2(a), as amended by P.L.1991, ch. 65, § 1. Both charges were consolidated for one jury trial, and the defendant was found guilty of both crimes. The defendant's motion for new trial was denied, and she subsequently filed a timely appeal. Following a prebriefing conference, the case was assigned to the regular calendar for full briefing and arguments, which were heard by this court on May 19, 1995. We affirm the judgment of the Superior Court. The facts of the case insofar as pertinent to this appeal are as follows.

On May 25, 1992, at approximately 8:30 p.m., a car driven by defendant struck a telephone pole in front of Lindy's Tavern on School Street in North Smithfield. Leo Beaulieu, a resident of North Smithfield who lived near Lindy's Tavern, heard the noise and, looking out his front door, saw that a car had smashed into a pole. After calling the

police to report the accident, Beaulieu walked over to the accident scene and saw a bleeding woman in the driver's seat and a man in the passenger's seat. Beaulieu went back to his house and called the rescue squad.

One of the North Smithfield police officers who arrived at the scene, Patrolman Thomas Lafleur (Lafleur), testified that when he first saw defendant at the accident scene, she was sitting in the passenger seat of the vehicle with blood on her face. She refused medical assistance, however, and was yelling, swearing, and "waving her arms around * * * [and] turning her head while they were trying to bandage her and her injuries." Lafleur testified that not only was defendant screaming, she also smelled of alcohol and her behavior ranged from calm to shouting obscenities and screaming. She also was unsteady on her feet, and two officers had to hold her to prevent her from falling down. Subsequent to these observations, Lafleur arrested defendant for suspicion of driving while intoxicated. Because defendant was unable to maintain her balance on her own and Lafleur did not want her to injure herself further, he did not subject defendant to field-sobriety tests.

After defendant was arrested and transported to the North Smithfield police station, Sergeant Bruce Senecal (Senecal), who was on duty that night, noted the same signs of defendant's intoxication that Lafleur had observed. He testified that she was combative, yelling and screaming, and she insisted that she was in Burrillville. She smelled of alcohol and demonstrated mood swings "from one second to another". Moreover, while Lafleur was processing defendant's paperwork, she was screaming and threatening to kill Lafleur and Senecal and their family members and pets.

After defendant made threats of physical harm to Lafleur and Senecal, Senecal informed defendant that a tape recorder was going to be used. Using obscenities, defendant told Lafleur and Senecal that she did not care if a tape recorder was used. The tape recording was admitted into evidence at trial over defendant's objection. On the tape defendant screams obscenities at Lafleur and Senecal, makes vulgar sexual insults, and

repeatedly states that they (the police officers) had beaten and thrown her around.

Timothy Dubois (Dubois) towed defendant's automobile from the accident scene to North Smithfield Auto Body. At trial Dubois testified that the automobile was "totaled." The front of the car was badly damaged, the windshield was broken, and the steering column and dashboard were smashed. Dubois further testified that the day after the accident a man and a woman arrived at North Smithfield Auto Body and inquired about the towing charges. While the woman was speaking with Dubois, the man stood near the car, attempting to take something out of its trunk. At trial, Dubois identified defendant as the woman at the auto body shop and testified that the man accompanying her had attempted to remove from the trunk a few "guns wrapped in a yellow blanket." When Dubois saw that the man had removed the guns from the trunk he told him that he had to put everything back into the vehicle until the towing charges had been paid. The man complied and returned the guns to the trunk of the car. The defendant and her companion then left the shop, and Dubois called the North Smithfield police. He was told to lock the car inside the garage and not to let anyone near it. That same afternoon or the next day the police arrived at the garage with a search warrant. They instructed Dubois to cut open the trunk and, upon opening it, found four rifles.

On appeal defendant argues that the search warrant which police used to obtain the rifles from her automobile was invalid since it had not been signed. She therefore claims that the trial justice committed reversible error in refusing to suppress the guns at trial. The defendant's second argument on appeal relates to the tape recording of defendant's booking procedures that police had obtained on the night of her accident and arrest. The defendant claims that the trial justice abused his discretion in admitting into evidence the audio recording. We are not persuaded by defendant's arguments.

■ The defendant first contends that the search warrant which authorized the North Smithfield police to search her car and confiscate the guns in the trunk was invalid

**710**

because it had not been signed by the judge who had issued it. She claims, therefore, that the trial justice erred in refusing to suppress the guns at trial. We do not agree.

After learning from the tow-truck operator that defendant's car contained several guns, two North Smithfield police officers, Senecal and Captain Theodore Lemieux (Lemieux), completed an application for a warrant to search Huguenin's automobile. On May 27, 1992, Senecal and Lemieux brought the application to District Court Judge Stephen Erickson. Senecal testified at a suppression hearing that he had signed the affidavit and in the presence of Judge Erickson swore to the truth of the affidavit. Lemieux testified at the hearing that his signature appeared on the first page of the complaint, the request to search and seize property. He further testified that when he and Senecal met with Judge Erickson, they presented to him an application for a search warrant. Senecal submitted a sworn affidavit in support thereof. Both officers testified that Judge Erickson read the paperwork and proceeded to sign certain sections of the application and warrant. They testified they did not realize that the judge had failed to sign the actual warrant until after it had been executed.

In addition to the testimony of the officers, Judge Erickson testified at the hearing on the motion to suppress. He testified that he had read the entire application presented by Senecal and Lemieux, had administered the oath to Senecal, and had signed both the first page of the application and the affidavit. He further testified that although he had not signed the warrant page of the application, he had reviewed it and had intended to sign it. He characterized his failure to sign it as "inadvertent." Furthermore, Judge Erickson testified that he had completed the line located above the blank signature line, which stated that the warrant was issued at Providence in the county of Providence.

The issue of whether the inadvertent failure of the issuing judge to sign a warrant thereby renders the warrant invalid has not previously been addressed by this court. The Supreme Judicial Court of Massachusetts, however, addressed this issue in *Commonwealth v. Pellegrini,* 405 Mass. 86, 539 N.E.2d 514, *cert. denied,* 493 U.S. 975, 110 S.Ct. 497, 107 L.Ed.2d 501 (1989), a case with facts very similar to the instant case.

In *Pellegrini* a police officer applied to the Newton District Court for a warrant authorizing a search of a garage in Newton. *Id.* at 86–87, 539 N.E.2d at 514. A District Court judge reviewed the police officer's affidavit in support of the application for the warrant. *Id.* at 87, 539 N.E.2d at 514. In the presence of the judge the police officer signed both a form affidavit (with the particulars filled in by the police officer) and a two-page typed affidavit containing the police officer's testimony concerning probable cause. *Id.* at 87, 539 N.E.2d at 515. The issuing judge signed both documents, attesting that the officer swore to the truth of their contents in front of the judge. The judge then handed the documents to the police officer and said, "You have a good warrant." *Id.* The judge had failed, however, to sign the warrant. After the police officer had executed the warrant and confiscated from the defendant's garage the contraband described in the warrant, the police officer returned to the issuing judge who then signed the warrant. *Id.*

The Supreme Judicial Court of Massachusetts held that when it was clear that the District Court judge had intended to issue a valid warrant, his failure to sign it was " 'no more than a clerical error' " and did not invalidate the warrant. *Id.* at 89, 539 N.E.2d at 516.

In the instant case it is clear from the testimony of Senecal, Lemieux, and most importantly Judge Erickson that Judge Erickson had intended to sign the warrant. Judge Erickson testified that he had reviewed the entire warrant application, administered the oath to Senecal, and signed both the first page of the application and the affidavit. Since the evidence clearly showed that Judge Erickson had intended to sign the warrant, his inadvertent failure to do so does not render the warrant invalid. A mere clerical error will not void an otherwise valid warrant.

 Furthermore, there was ample probable cause for the warrant to issue since

Dubois had seen the guns in the trunk of defendant's automobile and had immediately notified the police. *See Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. Riccio,* 551 A.2d 1183 (R.I. 1988); *State v. Ricci,* 472 A.2d 291 (R.I.1984). In addition, this information was subsequently confirmed by the police. A warrant, that is supported by probable cause and otherwise valid is not void merely because of an inadvertent failure to sign it.

■ The defendant next contends that the trial justice erred in allowing into evidence the audio recording of defendant after her arrest while she was at the North Smithfield police station. She contends that the tape was unfairly edited and was therefore an inaccurate and misleading depiction of what occurred that evening. We do not agree.

■ "Relevant evidence [is] * * * evidence that tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without such evidence." *State v. Pratt,* 641 A.2d 732, 741 (R.I.1994) (quoting *State v. Houde,* 596 A.2d 330, 333 (R.I.1991)). Although Rule 402 of the Rhode Island Rules of Evidence states that all relevant evidence is admissible, there are certain limitations. "[R]elevant[ ] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." R.I. R.Evid. 403; *see also State v. Tempest,* 651 A.2d 1198, 1215–16 (R.I.1995); *Jameson v. Hawthorne,* 635 A.2d 1167, 1170 (R.I.1994). The determination of the relevance of evidence and its degree of prejudice to defendant falls within the discretion of the trial justice. *Pratt,* 641 A.2d at 741 (citing *State v. Neri,* 593 A.2d 953, 956 (R.I.1991)). That determination will not be disturbed on appeal unless there is an abuse of this discretion. *Id.*

In the instant case the tape recording of the defendant was relevant to show the defendant's conduct on the night of her arrest. Her behavior and language on that evening captured on the audio tape was highly probative of her probable intoxication. Because of the relevant and highly probative nature of the tape recording, the trial justice properly admitted it into evidence.

For the foregoing reasons the defendant's appeal is denied and dismissed. The judgment of the Superior Court is hereby affirmed. The papers in the case may be remanded to the Superior Court.

BOURCIER, J., did not participate.